## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. **05-23087**

JACK COOPER PINTO, NICOLA PRAZERES,
OCTAVIO REVELES, individually, and on behalf of all
others similarly situated,

CLASS ACTION

CIV-ALTONAGA

Plaintiffs,

-vs-

PRINCESS CRUISE LINES, LTD d/b/a  MAGISTRATE JUDGE
PRINCESS CRUISES                  TURNOFF

Defendant.

_____/



### CLASS ACTION COMPLAINT

Plaintiffs, JACK COOPER PINTO, NICOLA PRAZERES, OCTAVIO REVELES,

individually, and on behalf of all others similarly situated, bring this action against Princess

Cruise Lines, Ltd. d/b/a Princess Cruises, ("Princess Cruises") for breach of contract and for

violating the Seaman's Wage Act, 46 U.S.C. § 10313(f) & (g), and file this Class Action

Complaint.  As alleged below, Princess Cruises failed to pay Plaintiffs, and the putative class

members, overtime wages to which they are entitled, and Plaintiffs have not been paid those

wages upon their discharge from Princess Cruises's vessels in a U.S. port or harbor.  As grounds

for their action, Plaintiffs allege:

### PARTIES

**Plaintiffs**

1.      Plaintiffs are seafarer-employees whose terms of employment are not governed by the

        Philippine Overseas Employment Administration ("P.O.E.A.") and who are currently

        working and/or have worked aboard one or more of Defendant Princess Cruises's

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

1

Bermudan flagged vessels. Plaintiffs have been discharged from their respective vessels upon which they are or were employed at the termination of voyages in U.S. ports or harbors and have not been paid their full wages owed by Defendant.

2.  Plaintiff JACK COOPER PINTO ("PINTO") is an Indian seaman employed by Princess Cruises and last worked aboard the Bermudan flagged vessel M/S Diamond Princess as a gift shop assistant on or about August 6, 2005.

3.  Plaintiff NICOLA PRAZERES ("PRAZERES") is a Portuguese seaman employed by Princess Cruises and last worked aboard the Bermudan flagged vessel M/S Caribbean Princess as a waiter on or about June 11, 2005.

4.  Plaintiff OCTAVIO REVELES ("REVELES") is a Mexican seaman employed by Princess Cruises for over 13 years and is currently working aboard the Bermudan flagged vessel M/S Caribbean Princess as a waiter.

5.  Plaintiffs represent seamen who historically bear the protections as wards of the courts. As stated by Justice Story in 1983 and has been a guiding principle of the courts:

> Every court should watch with jealousy an encroachment upon the rights of seamen, because they are unprotected and need counsel; because they are thoughtless and require indulgence; because they are credulous and complying; and are easily overreached. But courts of maritime law have been in constant habit of extending toward them a peculiar, protecting favor and guardianship. They are emphatically the wards of admiralty.[1]

6.  This sentiment was echoed by the United States Supreme Court stating:

> The reasons underlying the rule, to which reference must be made in defining it, are those enumerated in the classic passages by Mr. Justice Story in *Harden v. Gordon*, [cite omitted]: 'The protection of seamen, who, as a class, are poor, friendless and improvident, from the hazards of illness and abandonment while ill in foreign ports; the inducement to masters and owners to protect the safety and health of seamen while in service; and maintenance of a merchant marine for the commercial service and maritime defense of the nation by inducing men to accept employment in an arduous and perilous service.'

---

[1] *Harden v. Gordon*, 11F.Cas. 480, 485 (C.C.D. Me. 1823).

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

> Admiralty courts have been liberal in interpreting this duty 'for the benefit and protection of seamen who are its wards.'[Cite omitted].[2]

7.    Plaintiffs and the seamen they represent, needs such protection.  The seamen hail from innumerable nations.  Many come from lower income backgrounds and have little to no formal education.  They come aboard these cruise line vessels where they have meager accommodations while working extremely long hours under the harshest conditions.  Despite the circumstances, they seek employment with the Defendant and similar cruise line companies in hopes of finding a better life.

8.    Plaintiffs and the putative class regularly work overtime which is not being paid for which they are entitled upon their discharge.

**Defendant Princess Cruises**

9.    Princess Cruises is organized and exists under the laws of Bermuda, with its principal address located at 24305 Town Center Drive, Santa Clarita, CA.  At all times material hereto, Princess Cruises was Plaintiffs' employer and owner and operator of the vessels on which Plaintiffs were employed.  Princess Cruises is registered to do business in Florida.

10.   Princess Cruises is a global cruise and vacation company that offers more worldwide cruise destinations than any other major line.  Princess Cruises has more than 150 itineraries ranging from seven to 72 days.  The cruise line sails to all seven continents and calls at approximately 260 ports around the world.  It is also one of the most recognized cruise lines in the world because one of its ships was featured on the television show *The Love Boat.*

---

[2] *Vaughan v. Atkinson*, 369 U.S. 527, 531-532 (1962).

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

3

11.   Princess Cruises has a fleet of approximately fourteen ships leaving from various ports of call in the United States including Ft. Lauderdale, San Juan, P.R., Honolulu, New York City, and Los Angeles.

12.   Twelve of Princess Cruises's ships are registered in Bermuda:  (1) Sapphire Princess; (2) Caribbean Princess; (3) Diamond Princess; (4) Island Princess; (5) Coral Princess; (6) Star Princess; (7) Golden Princess; (8) Grand Princess; (9) Dawn Princess; (10) Sun Princess; (11) Regal Princess; and (12) Royal Princess. The remaining two vessels, the Tahitian Princess and the Pacific Princess, are registered in Gibraltar.

## JURISDICTION AND VENUE

13.   This Court has jurisdiction over this action pursuant to 46 U.S.C. § 10313(f) & (g), federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332.

14.    This Court has personal jurisdiction over the Defendant and venue is proper in the Southern District of Florida because many of the Defendant's acts and transactions constituting violations of the Seaman's Wage Act occurred in the Southern District of Florida.  Moreover, Defendant, at all times material to the allegations contained in this Complaint, personally and through an agent, operated vessels in the waters of this state and district and also:

   a.   Personally and through an agent operated, conducted, engaged in and carried on a business venture in the Southern District of Florida or had an office or agency in the Southern District of Florida; and/or

   b.   Personally or through an agent engaged in substantial activity within this state and district.

   c.   Operated vessels in the waters of this district, state, and/or county; and/or

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

4

    d. The acts of the Defendant set out in this Complaint occurred in whole or in part in this county, state, and/or district.

15.    Venue is also proper in this district pursuant to 28 U.S.C. § 1391(c) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Southern District of Florida and, as set forth in the preceding paragraph, Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

16.    The purported terms and conditions of Plaintiffs' employment with Defendant are contained in the "Principal Terms of Employment and Code of Conduct" ("Terms of Employment"). An example of the terms of employment is attached in Composite Exhibit A.

17.    Article (1) of the Terms of Employment provides, "These Principal Terms of Employment shall apply to US Dollar paid crew members enrolled onboard the vessels of the Princess Cruises Fleet."

18.    Article (2) of the Terms of Employment states that "Each employee (crew member) covered by this Agreement, on joining the ship or on transferring to another ship within the Princess Cruises fleet ("vessel"), must sign the Crew Agreement, a legally binding document which incorporates these Principal Terms of Employment and is the Contract of Employment."

19.    Article 38 of Bermuda's Merchant Shipping Act requires all employers sign crew agreements with each seaman aboard its ships. Failure to sign the agreement is a violation of Bermudan law and subjects the employer to statutory fines.

20.    Defendant Princess Cruises failed to sign crew agreements with a portion of its crew, in violation of the laws of Bermuda.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

5

21.     Despite not signing crew agreements, Plaintiffs performed their duties and were paid in accordance to the Terms of Employment.

22.     Under the Terms of Employment, Plaintiffs and the class members are to receive a Guaranteed Consolidated Monthly Wage for each calendar month worked.  The wage is based on working 330 hours per 30 day month.  The Guaranteed Consolidated Wage scheme purports to include compensation for regular overtime, leave and for working on Saturdays, Sundays and holidays.

23.     As compensation for Saturdays, Sundays and holidays, Defendant promises to pay 9 days monthly of 8 hours days – a total of 72 hours – at the regular overtime rate, which is included in the calculation of the Consolidated Monthly Wage.

24.     According to the Terms of Employment, the Consolidated Monthly Wage should include the following hours of pay:

|  | Monthly Hours of Work |
| --- | --- |
| Ordinary hours of duty at 8 hours per day (Monday – Friday) | 176 |
| Saturdays, Sunday and Holidays Paid at Regular Overtime Rate | 72 |
| Regular Overtime Hours | 90 |
| **Total** | 338 |

25.     The calculation of wages and determination of number of days in a month or hours in a day is based on accounting principles applied by Defendant.

26.     Therefore based on the Terms of Employment, the Plaintiffs are to be paid their regular consolidated wage for 330 hours and anything that surpasses these 330 hours are paid at the Excess Hourly Rate.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

6

27. For periods less than a month, Excess Hours are paid when the total hours actually worked exceed 11 hours per day multiplied by the number of days worked. For instance, all hours worked in excess of 110 during a period of 10 days on board during a month would be paid the Excess Hourly Rate.

28. The Terms of Employment attempts to exclude certain positions from any entitlement to compensation for extra hours worked. The Terms of Employment provides that "For certain positions, the Consolidated Monthly Wage has been calculated using fourteen (14) hour days. As a result, these positions have been reasonably compensated for all hours of work and no excess hours may be claimed." Accordingly, Defendant has a corporate-wide practice of refusing to pay certain positions any compensation for hours worked in excess of 70 per five-day workweek.

29. Furthermore, the employment contract attempts to restrict the employees from disputing hours of work after the seamen sign his/her hours of work form. The contracts state that a seaman's verification is in essence an admission that the hours are correct. However, in practicality, the seamen are not allowed to change or alter their hours of work. Such a request is responded with threats of non-payment.

30. Defendant Princess has a corporate wide strategy of maintaining and submitting false hours of work for all its employees. These records do not reflect the actual hours of work performed by its employees. Instead, they reflect the hours that will satisfy its legal obligations pursuant to the applicable IMO/ILO hours of rest requirements.

31. Throughout the duration of Plaintiffs' employment by Defendant, Plaintiffs have regularly worked in excess of 330 hours per month and/or 11 hours per day as required by the assigned duties and tasks given to them by their superiors and have not been paid

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

7

their overtime and/or Excess Hours wages upon their discharge from Defendant's vessels in a U.S. port or harbor.

32. Defendant has engaged in a widespread pattern or practice of requiring Plaintiffs and other class members to work excess hours. The acts establishing this pattern or practice include:

    i.   Requiring seafarer-employees to report to and prepare their respective assigned areas of work earlier than their scheduled hours of work.

    ii.  Requiring seafarer-employees to remain in their respective assigned areas of work past their scheduled hours of work.

    iii. Requiring seafarer-employees to perform additional tasks and/or duties as "side jobs".

    iv. Requiring seafarer-employees to regularly attend meetings either before or after their scheduled hours of work.

33. All conditions precedent for Plaintiffs' claims are satisfied, have been performed or have occurred.

## CLASS ALLEGATIONS

34. Plaintiffs bring this action as a class action against Defendant pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated. The class is defined as:

> All former and current, non-P.O.E.A. seafarer-employees, who have worked or are working for and aboard various Bermuda-flagged vessels owned by Defendant Princess Cruises, worked overtime hours and have not or are not being paid in full, upon their discharge from their respective vessels upon which they are/were employed at the termination of voyages in U.S. ports or harbors. Excluded from the class are (a) Defendant, and its officers and directors, and (b) the immediate family members of Defendant's officers and directors.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

8

**Numerosity**

35.     The members of the class are so numerous and geographically dispersed throughout the

United States and abroad that joinder of all class members is impracticable.  The class,

upon information and belief, consists of thousands of seafarers, whose payroll records,

work schedules, and work time records Defendant maintains.  Defendant has, or should

have, detailed records of the purported overtime hours Plaintiffs' worked and the base

wages it paid the class members.  The precise number of class members can only be

obtained through discovery.   Plaintiffs do not anticipate any difficulties in the

management of the action as a class action.

**Commonality**

36.     There are questions of law and fact that are common to the claims of Plaintiffs and the

entire class.  Among these common questions are the following:

a.  Whether failure to pay excess hour overtime is a breach of the employment contract
    and/or Terms of Employment.

b.  Whether the Defendant has engaged in a pattern or practice of requiring
    uncompensated overtime.

c.  Whether the Defendant failed to pay the seaman their wages for overtime hours
    worked while aboard Defendant Princess Cruises' vessels.

d.  Whether the seamen are entitled to penalty wages under 46 U.S.C. §10313(g).

**Typicality**

37.     Plaintiffs' claims are typical of the claims of the class in that each seaman is claiming

earned wages and penalty wages due to Defendant's failure to pay them approximately

for all hours they worked while aboard Defendant's vessels, and each class member has

sustained damages as a result of Defendant's actions.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

9

38.     Plaintiffs' claims are typical of the claims of the class and all class members sustained damages arising out of the Defendant's wrongful conduct in violation of the Terms of Employment, Bermuda law and federal statutory law complained of herein.

39.     Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiffs or the class.

**Adequacy of Representation**

40.     Plaintiffs are adequate representatives of the class and will fairly and adequately protect the interests of the class.  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them.  There is no hostility between Plaintiffs and the unnamed class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

41.     To prosecute this case, Plaintiffs have chosen the law firms Kozyak, Tropin & Throckmorton, P.A.; Crewmember and Maritime Advocacy Center, P.A.; and Downs, Brill Whitehead & Sage – law firms with vast experience in maritime litigation and class action litigation.  The law firms have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**Requirements of Fed. R. Civ. P. 23(b)(3)**

     i.     **Predominance**

42.     The questions of law or fact common to the claims of Plaintiffs and of each class member predominate over any questions of law or fact affecting only individual members of the class.  All claims by named Plaintiffs and unnamed class members are based on the same alleged "across the board" failure to pay the class members, upon discharge in a U.S. port or harbor, for excess hours worked.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

10

43.  Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there are some individualized damages.

44.  As a result, when determining whether common questions predominate, courts focus on the liability issue and if the liability issue is common to the class, as in the case at bar, common questions are held to predominate over individual questions.

45.  Since all claims by named Plaintiffs and unnamed class members are based on the same alleged "across the board" failure to pay the class members, upon discharge in a U.S. port or harbor, for all overtime hours worked, the predominance requirement of Fed.R.Civ.P. 23(b)(3) is satisfied.

**ii.    Superiority**

46.  A class action is superior to thousands of individual actions in part because of the non-exhaustive factors listed below:

   a.  Joinder of all class members would create extreme hardship and inconvenience for the affected seafarers because of their immense geographical dispersion. Class members reside in the United States, Central and South America, Europe, Asia, India and Africa.

   b.  It is highly unlikely that individual plaintiffs would shoulder the burden of this vast and complex litigation as many are simply too poor or ignorant to bring separate actions.

   c.  There are no known individual class members who are interested in individually controlling the prosecution of separate actions.

   d.  The interests of justice will be well served by resolving the common disputes of potential class members in one forum.

   e.  Individual suits would not be cost effective, especially in light of the fact that many of the class members are foreign nationals.

   f.  A class action is a superior method of seeking relief because certain members of the class fear retaliation from Defendant with respect to their present employment.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

11

g. The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

47. Federal courts have already determined that in wage claim suits under 46 U.S.C. § 10313 involving many potential plaintiffs as in the case at bar, "the class action [pursuant to Fed.R.Civ.P. 23(b)(3)] is not simply the 'superior' means of resolving the dispute fairly and efficiently but the only means of doing so."[3]

**COUNT I**
**Failure to Pay Excess Hours Overtime Wages in Breach of the Employment Contract and/or Terms of Employment**

48. Plaintiffs and the class they purport to represent reallege and incorporate by reference paragraphs 1- 47 of this Complaint

49. Plaintiffs and the class were employed at various times aboard several of Defendants' vessels, as member of the crews thereof and fully performed their duties as crew members and accrued earned wages payable pursuant to the Terms of Employment.

50. Article 5 of the Terms of Employment provides as follows:

CONSOLIDATED MONTHLY WAGE
Crew members receive a Guaranteed Consolidated Monthly Wage for each calendar month worked. This wage is based on working 330 hours per 30 day month during each calendar month and includes compensation for leave and for working Saturdays, Sundays and holidays. As compensation for Saturdays, Sundays and public holidays, Princess will pay 9 (nine) days monthly of 8 (eight) hours which shall be paid at regular overtime rate and has been included in the calculations of the Consolidated Monthly Wage.

EXCESS HOURS
Excess Hours are paid when the total authorized hours actually worked during the month exceeds eleven hours per day multiplied by the total days in the month.

*    *    *

For periods worked less than one month, Excess Hours are paid when the total hours actually worked exceed eleven (11) hours.

---

[3] *Guenther v. Sedco*, 866 F. Supp. 786, 788 (S.D.N.Y. 1994); *Bolanos v. Norwegian Cruise Lines Limited*, 212 F.R.D. 144, 158 (S.D.N.Y. 2002).

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

12

51.    As such, pursuant to the Terms of Employment, Defendant Princess Cruises is obligated to pay Plaintiffs and the entire class for any work performed which exceeds 11 hours a day at an Excess Hourly Rate.

52.    These Excess Hours are not compensated by Defendant's consolidated wage scheme.

53.    Upon information and belief, the Defendant, in breach of the Terms of Employment, the common law, U.S. statutory law, and the general maritime law, and notwithstanding its obligations to its employees, failed to make payment of the full wages due to said Plaintiffs and class members, but rather has retained these funds for itself.

54.    Defendant Princess Cruises has a corporate wide strategy of avoiding the payment of any and all excess hours due to the Plaintiffs and the class.

55.    Defendant has neglected and refused, and still neglects and refuses, without sufficient cause, to pay Plaintiffs and the class for the excess hours worked aboard Defendant's vessels.   By reason of the foregoing, the Defendant has breached the Terms of Employment, and as a direct and proximate result Plaintiffs have been deprived their lawful wages and suffered damage.

### COUNT II
**Failure to Pay Wages**
**Under the Seaman's Wage Act, 46 U.S.C. § 10313**

56.    Plaintiffs and the class they purport to represent reallege and incorporate by reference paragraphs 1- 55 of this Complaint.

57.    Defendant has neglected and refused, and still neglects and refuses, without sufficient cause, to compensate Plaintiffs and the class pursuant to their contract and/or Terms of Employment for overtime hours worked up to 330 hours a month and Excess Hours at the

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

13

Excess Hourly Rate for hours worked in excess of 330 hours per month upon Plaintiffs and the classes' discharge from Defendant's vessels in a U. S. port or harbor.

58.    By reason of the foregoing, the Defendants, directly and indirectly, have violated 46 U.S.C. § 10313(f), and Plaintiffs and the class have suffered damages thereby.

59.    Pursuant 46 U.S.C. § 10313(g), when payment is not made as provided under 46 U.S.C. § 10313(f) without sufficient cause, the master or owner shall pay to the seaman 2 days wages for each day payment is delayed.

60.    As a result of Defendant's conduct, the Plaintiffs and the class are entitled to an  award of all wages due for hours worked in excess of 330 hours per month, interest on the unpaid amounts until the date of judgment, and all amounts due to the Plaintiffs and the class as penalties under applicable provisions of the 46 U.S.C. §10313(g).

### RELIEF REQUESTED

**WHEREFORE**, Plaintiffs, on their own behalf and on behalf of the Class, respectfully request that this Court:

a)   Certify this action as a class action under Federal Rule of Civil Procedure 23.

b)   Declare that the Defendant has engaged in a pattern and/or practice of refusing to pay the Plaintiffs and the Class the wages to which they are entitled under the employment contract/ Terms of Employment and U.S. law, and enjoining the Defendant from further engaging in such a pattern and/or practice.

c)   Declare that Defendant breached the Terms of Employment governing the relationship between it and the Plaintiffs, by refusing to pay Plaintiffs and the class wages for the Excess Hours Overtime to which they are entitled to under the Terms of Employment.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

14

d) Declare that Defendant violated the Seaman's Wage Act by neglecting and;or refusing, without sufficient cause to compensate Plaintiffs and the class pursuant to their contract and/or Terms of Employment for overtime hours worked up to 330 hours a month and Excess Hours at the Excess Hourly Rate for hours worked in excess of 330 hours per month upon Plaintiffs and the classes' discharge from Defendant's vessels in a U. S. port or harbor.

e) Award Plaintiffs and the class damages for unpaid Excess Hours compensation, including pre-judgment interest on these amounts.

f) Award Plaintiffs and the class penalty wages for Defendant's refusal to pay full wages and prejudgment interest on these amounts.

g) Award Plaintiffs and the class their attorneys' fees, costs and expenses.

h) Award Plaintiffs and the class such further relief as is appropriate in the interests of justice.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

15

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on any and all counts for which a trial by jury is permitted.

Dated this _18_ day of November, 2005.

Respectfully submitted,

Julio Ayala, Esq.
CREWMEMBER AND MARITIME
ADVOCACY CENTER
169 E. Flagler Street
Suite 1620
Miami, Florida 33131
(305) 374-9099
(305) 374-5099 – fax

KOZYAK TROPIN & THROCKMORTON, P.A.
Counsel for Plaintiffs
2525 Ponce de Leon
9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800

By: _____
    Thomas A. Tucker Ronzetti, Esq.
    Florida Bar No.: 965723
    Christopher F. Branch, Esq.
    Florida Bar No.: 941751

David W. Brill, Esq
DOWNS BRILL WHITEHEAD & SAGE
Mercantile Bank Building
One Southwest 129th Avenue, Suite 305
Pembroke Pines, Florida 33027
(954) 447-3556
(954) 447-3557 –fax

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

16

# EXHIBIT "A"



# Principal Terms of Employment
## and Code of Conduct

# Princess Cruise Lines, Ltd.

PRINCESS CRUISES
PRINCIPAL TERMS OF EMPLOYMENT
PRINCESS CRUISE LINES, LTD.

## INTRODUCTION

### C.R.U.I.S.E

Princess Cruises operates a customer awareness program called C.R.U.I.S.E. which stands for Courtesy, Respect, Unfailing in Service Excellence. This service credo not only applies to our customers, the passengers, but to our internal customers, the crew. The overall mission statement states:

*"At one point in every day, one of our customers will come
into contact with one of us, the Princess employees, and at that moment
in time we will be Princess Cruises. Our entire reputation as a
Company will be in our hands and we will make an impression.
The impression will either be good or it will be bad and we will
have spoken to our customers more loudly than all our community
involvement, all our advertising and all our public relations put together."*

However, life and work at sea are different than on land and the Principal Terms of Employment and the Code of Conduct are designed as a guide to the types of behavior which are expected and are not accepted.

As an individual you have the right to perform your job to the best of your abilities, the right to be treated fairly by both your co-workers and your supervisor, and the right to enjoy your rest time in any way you please, with-in the ship's rules and regulations and without disturbance from others. To enjoy these rights as an individual you also have the obligation to respect the individual rights of everyone else in the ship's complement.

Princess is a dynamic and successful company offering luxury cruises throughout the world. It is our recruiting policy to only engage the best individuals of good character. We understand that you would have certainly had other possibilities of employment and we are pleased that you have chosen Princess Cruises.

Welcome Aboard!

1

### Illegal Drugs and Alcohol Abuse

Princess has a zero tolerance to drug abuse and strict rules regarding alcohol consumption. This topic is discussed in detail in the body of this document. Each crew member must be aware that the use of illegal drugs may kill them. Each crew member must be aware that the trafficking in, possession or sale of illegal drugs is a criminal offense and will result in criminal prosecution in the applicable jurisdiction. Conviction results in lengthy prison sentences or in some jurisdictions – death. No amount of short lived physical satisfaction or monetary reward is worth the loss of your freedom or your life. This will happen to you if you become involved with illegal drugs. The odds are not in your favor.

### Article 1
### Parties and Applications of the Agreement

These Principal Terms of Employment shall apply to US Dollar paid crew members enrolled onboard the vessels of the Princess Cruises Fleet.

### Article 2
### Employer and Employee

The Employer is Princess Cruise Lines, Ltd., a Bermuda Company ("Princess"). Each employee (crew member) covered by this Agreement, on joining the ship or on transferring to another ship within the Princess Cruises fleet ("vessel"), must sign the Crew Agreement, a legally binding document which incorporates these Principal Terms of Employment and is the Contract of Employment.

Princess reserves the right to transfer the crew member to any vessel in its fleet and the crew member agrees to provide services while onboard any Princess ship to which they may be appointed during the term of their agreement.

### Article 3
### Application of the Agreement

Any crew member to whom this Agreement is applicable, in accordance with Article 1 above, shall be covered by this Agreement with effect from the date on which crew member is engaged until the date on which crew member signs off and/or the date until which, in accordance with this Agreement, Princess is liable for the payment of wages.

### Article 4
### Duration and Termination of the Contract

A)     The period of time for which a crew member is employed will be as agreed with Princess and/or the recruiting agent. Princess has the right to reduce or to extend

2



this time by a maximum of 2 (two) months.

For first time crew members, the initial two (2) months on board shall be considered as a probationary period. Prior to and at the end of the probationary period, if Princess is not satisfied with the crew member's performance, Princess has the right to terminate the employment, giving to the crew member seven (7) days notice, paying the wages until the date of signing off and the repatriation expenses. Prior to the end of the probationary period the new crew member has the right to terminate their employment by giving seven (7) days advance notice to Princess to enable relief to be appointed and join the vessel, but crew members are liable for their own repatriation expenses.

B)   Crew members compelled to leave employment with Princess before the agreed period of service on board the vessel has expired, upon the loss, laying up or sale of the vessel, shall be entitled to receive compensation equivalent to 2 (two) months basic monthly wage. A crew member may be dismissed for cause, see Articles 10 and 13.

C)   A crew member shall be entitled to sign off immediately if the vessel is certified unseaworthy by a competent authority.

D)   If, in Princess's opinion, the crew member's medical condition or status renders the crew member unfit to serve in the capacity for which he or she was hired for a period of seven days or more, the employment agreement may terminate on the seventh day following that determination

E)   Princess recognizes that from time to time crew members may request leave on compassionate grounds and in genuine cases and in certain defined circumstances Princess will be responsible for covering the cost of repatriation. When, during the course of a voyage the lawful spouse or child or, in the case of a single crew member, a parent is dangerously ill or has died, every reasonable effort will be made by Princess to repatriate the crew member concerned as quickly as possible. Crew member agrees that, at the time of signing off on compassionate grounds, the return airfare may be deducted from the wages, but the crew member may obtain a refund of such deduction by providing to Princess satisfactory medical certificates issued by a registered medical practitioner attesting illness or death of that applicable relative mentioned in this paragraph.

F)   Crew member's service ceases immediately if crew member deserts the vessel, or if, on sign off, crew member decides for their own reasons, to visit and/or reside in any other place prior to returning home. In such case the date of sign off will be taken as the date of cessation of service and the crew member shall indemnify Princess in every respect against death or disability claims or any other claims arising as a result of such decision of the crew member. Princess's liability will be limited to providing reasonable transport to the crew member to cover crew member's repatriation from the port of disembarkation to home.

3

G)   If the crew member wishes to disembark for any personal reasons prior to the expiration of the Contract, the crew member must give Princess twelve (12) days prior written notice and pay the cost of repatriation. Subject to satisfactory reports, crew members who give proper notice will be considered for re-employment after twelve months; those who do not give proper notice will not be re-employed

H)   Crew members who are disembarked for disciplinary reasons are responsible for their own repatriation costs which may be deducted from any wages due and may be precluded for future employment on any Princess vessel. The contract for any crew member disembarking for disciplinary reasons or in circumstances where twelve days notice has not been given shall be deemed to have terminated on disembarkation.

## Article 5
### Wages

A.   WAGE DETAILS
Full details of individual wages (Guaranteed Consolidated Monthly Wage, Basic Monthly Wage, Excess Hours Rate and Tipping Recommendations for those in gratuity positions) are advised by Princess' recruiting offices and are also available on board the vessel.

B.   CONSOLIDATED MONTHLY WAGE
Crew members receive a Guaranteed Consolidated Monthly Wage for each calendar month worked. This wage is based on working 330 hours per 30 day month during each calendar month and includes compensation for leave and for working on Saturdays, Sundays and holidays. For purposes of this Agreement, the following days have been considered as holidays at sea or in port: Christmas day, Boxing day, New Year's day, Good Friday, Easter Monday, International Labor Day (1 May), Spring Bank Holiday and Summer Bank Holiday. As compensation for Saturdays, Sundays and public holidays, Princess will pay 9 (nine) days monthly of 8 (eight) hours which shall be paid at regular overtime rate and has been included in the calculation of the Consolidated Monthly Wage.

The Consolidated Monthly Wage includes the following hours of pay:

|  | Monthly Hours of Work |
|---|---|
| Ordinary hours of duty at 8 hours per day (Monday - Friday) | 176 |
| Saturdays, Sundays and Holidays | 72 |
| Regular Overtime Hours | <u>90</u> |
|  | 338 |

4

For purposes of this Agreement, the calculation of wages and determination of the number of days in a month or hours in a day shall be based on the accounting principles applied by Princess and shall be determined without reference to the specific itinerary of any vessel.

C.    EXCESS HOURS

Excess Hours are paid when the total authorized hours actually worked during the month exceeds eleven hours per day multiplied by the total days in the month. For example, all authorized hours worked during a thirty (30) day month in excess of three hundred and thirty (330) hours are compensated at the Excess Hourly Rate. For periods worked of less than one month, Excess Hours are paid when the total hours actually worked exceed eleven (11) hours per day multiplied by the number of days worked. For example, all hours worked in excess of one hundred and ten (110) during a period of ten days onboard during a month would be paid at the Excess Hours Rate.

For certain positions, the Consolidated Monthly Wage has been calculated using fourteen (14) hour days. As a result, these positions have been reasonably compensated for all hours of work and no excess hours may be claimed.

Hours of work and rest shall be recorded individually. Such records shall be handed to the crew member for approval every two weeks or at shorter intervals. The record must be signed by the Supervisor or the Head of the Department as well as by the crew member after which the record is final. This record will be maintained on board.

D.    PAYMENT OF WAGES

Wages accrue from and including the day the crew member signs the Crew Agreement onboard and up to and including the day when the crew member signs off the vessel. All wages shall be paid monthly in arrears. Compensation for periods of less than one month is pro-rated on the basis of one/thirtieth for each day worked. The monthly wage paid to each crew member shall be in accordance with the wages in effect at the time and as set out in each individual crew member's letter of appointment or other written document setting forth such wages as applicable, and the wage schedules maintained onboard. After allowing statutory deductions and/or deductions authorized by the crew member, the wage shall be paid to the crew member directly.

E.    GRATUITY POSITION TIPPING RECOMMENDATIONS

Tipping recommendations for passengers have been established for the gratuity positions onboard each vessel, but it should be noted that these are guidelines only. Tipping is a personal issue depending upon the level of service provided. The

passengers are not obligated to pay any gratuities or adhere to these guidelines, and Princess is in no way liable to make up any difference. The solicitation of tips by crew members is not permitted.

F.   GUARANTEED CONSOLIDATED MONTHLY WAGE

The Guaranteed Consolidated Monthly Wage for certain positions assumes that a minimum level of gratuities will be received each month. Throughout the Hotel Department, Princess has established in many areas gratuity sharing and pooling arrangements. In the event that the number of passengers being served over a month falls to a level that will not generate sufficient gratuities for those in gratuity positions, the difference between the gratuities paid and the guaranteed minimum gratuity, if any, will be made up by Princess.

## Article 6
### Service in Case of Emergency, Safety of the Vessel and Vessel Security

Any hours necessary in case of emergency, directly affecting the immediate safety of the vessel, passengers and crew, of which the Captain shall be the sole judge, or for safety or onboard drills and courses, or work required to give assistance to other vessels or persons in immediate peril shall not count for Excess Hours payment.

All crew members are required to wear the safety clothing/equipment supplied by Princess and/or the vessel as appropriate.

When so required by Princess, crew members will undertake training and take an examination to obtain the Certificate of Proficiency in Survival Craft (CPSC) or Survival Craft Crewman (SCC) and undertake any other training for safety or job-related qualifications which may be required by Princess.

All crew members are required to attend safety and emergency drills, train in the use of firefighting and lifesaving equipment and evacuation procedures, etc., at intervals to be determined by the Captain in accordance with his or statutory requirements and to assist as and when required in any emergency situation.

## Article 7
### Traveling Expenses

Transportation expenses incurred in traveling from the nominated international airport of departure to join the vessel and traveling expenses for repatriation to the nominated international airport at the end of the regular period of Contract are met by Princess. If a lesser period has been completed, repatriation expenses are payable by Princess if discharge is on proven necessary medical grounds as allowed under Article 9, or the loss or laying up or sale of the vessel. Repatriation shall take place in such a manner that it meets all reasonable requirements with regard to comfort. Princess shall be liable for the cost of maintaining the crew member ashore until repatriation takes place. Expenses

6

incurred in getting to the nominated international airport of departure or returning home from the nominated international airport upon repatriation will not be reimbursed by Princess. Hotel accommodation and meals, in hotels and at times approved by Princess, will be paid by Princess at the port of joining/leaving where Princess deems appropriate.

## Article 8
### Health Requirements

Crew member agrees to submit to a physical examination in accordance with Princess medical standards by a medical doctor acceptable to Princess, as evidenced by a medical fitness certificate valid for the duration of the tour. Crew members must be prepared to be inoculated, vaccinated or take any other health precautions as may be required by Princess or the health authorities of the countries visited by the vessel. While onboard, curative medical care will be provided for conditions manifesting while in the service of the vessel and which are not pre-existing. No maintenance medications will be provided.

## Article 9
### Health and Accident Policy

Health and accident policy as described in this Article 9 has been arranged. A crew member who is disembarked for medical reasons which manifest while in the service of the vessel shall (except for pre-existing conditions) be entitled to curative medical attention (including hospitalization at Princess's expense). Princess will defray the expense of such medical care until the sick or injured crew member has reached maximum medical improvement. Further, in the case of disembarkation for medical reasons as described above, the crew member will receive such further benefits as described in his or her government mandated scheme or Collective Bargaining Agreement. In the absence of such schemes or Agreements, a crew member disembarked for medical reasons as described above will receive a daily maintenance stipend in an amount to be determined by Princess until the crew member reaches maximum medical improvement provided that valid medical certificates from a doctor acceptable to Princess are submitted. All medical attention provided at Princess's expense and maintenance or other payments shall be subject to the following conditions: a) the crew member shall comply with all instructions of Princess or their Agents at the port where they are landed subject to medical approval; and b) the crew member shall report upon arrival at their home to Princess or their Agents as soon as possible. Crew member authorizes any insurance company, organization, employer, hospital, physician, surgeon, pharmacy or other health care provider to release any information requested by Princess's insurers or their representatives. Any injuries arising from activities when the crew member is engaged in non-Princess assigned activities off the vessel are excluded from this provision for the purposes of any wage payment.

If a crew member dies as a result of an accident while in the service of the vessel, including an accident occurring whilst traveling to/or from the vessel at the request of Princess or their Agents, or as a result of marine peril (but excluding death occurring from own negligence), the sum of US $50,000 is payable to the immediate next-of-kin and US $7,000 to each child under the age of 21, subject to a maximum of 4 children.

A crew member who suffers injury as a result of an accident, while in the service of the vessel or traveling to or from the vessel and whose ability to work is permanently reduced as a result thereof, shall be entitled to a compensation for permanent disability. Accidents occurring as a result of a crew member's own negligent act or during non-Princess assigned activities off the vessel, are excluded from compensation. The degree of permanent disability that Princess is responsible to pay shall be determined by a doctor appointed by Princess. If a doctor appointed by the crew member disagrees with the assessment, a third doctor may be agreed jointly between Princess and the crew member. The third doctor's decision shall be final and binding on both Princess and the crew member. Based upon the degree of permanent disability, compensation will be paid by Princess to the crew member corresponding to the degree of permanent disability as set out in the table below:

| Percent Degree of Permanent Disability | US Dollar Payment To crew member |
|---|---|
| % | US $ |
| 100 | 50,000 |
| 75 | 37,500 |
| 60 | 30,000 |
| 50 | 25,000 |
| 40 | 20,000 |
| 30 | 15,000 |
| 20 | 10,000 |
| 10 | 5,000 |
| 5 | 2,500 |
| 3 | 1,500 |

with any differences including less than 10% disability, to be pro-rata

### Article 10
### Discipline, Complaints and Duties

Each crew member must conform to the Code of Conduct (Annex I), Complaints Procedure (Annex II), Dress Code (Annex III) and the Sexual Assault/Harassment Free Workplace (Annex IV) ('the Codes') together with Captain's Standing Orders which will be given to the crew member upon joining the vessel. In addition, each crew member shall perform all orders and assignments as delegated by the Captain and/or authorized Officers or Supervisors relating to the crew member's normal duties and/or any other duties including, but not limited to, the safety of the vessel and/or those onboard.

Time off is granted at the discretion of the crew member's Supervisor giving consideration to passenger service, operational and safety requirements and relevant ILO and STCW Conventions.

Crew members are advised that Princess has a policy of zero tolerance to drug abuse and strict rules exist concerning the consumption of alcohol. Captains and authorized Officers have the right to enter a crew member's accommodation to search for any stolen, contra-band, controlled or prohibited items if in their sole opinion they suspect the presence of such items in the accommodation or where the safety of the vessel and/or those onboard is in jeopardy. Captains and authorized vessel's Officers also have the right to arrange for crew members to be tested either randomly or otherwise for possession or use of illegal drugs in compliance with the Princess Drug Policy. Further, Captains and authorized Officers have the right to test for suspected violation of the alcohol rules for cause and to test all crew on duty in the event of a marine accident. Failure to comply with a request for such tests or the failure of such a test will lead to dismissal.

Crew members committing criminal acts will be subject to criminal prosecution in any appropriate jurisdiction.

## Article 11
## Uniforms

Uniforms shall be worn in accordance with rank and subject always to Princess rules.

## Article 12
## Crew's Effects, Loss or Damage through Misfortune

When crew members to whom this Agreement applies suffer total loss or a partial loss, or damage to their personal effects, as a result of the wreck or loss or stranding or abandonment of the vessel, or as a result of fire or flooding, or collision, they shall be entitled to recover from Princess compensation up to a maximum of US $ 3,000. Crew members shall certify that any information provided with regard to lost property is true to the best of their knowledge. Providing untruthful information shall result in a denial of all claims and termination. Payment of compensation for loss of effects is conditional upon the submission of a written declaration by the affected crew member which shall list any effects lost and attribute a reasonable value to the effects lost. Such declaration shall be certified true to the crew member's best knowledge and signed by the Captain. The definition of effects includes clothes, documents, navigation and other technical instruments and tools necessary to the trade of the crew member, but does not include negotiables, cash or jewelry.

## Article 13
### Princess Code of Conduct

The Code of Conduct stipulates the circumstances under which crew members may be dismissed and/or disciplined and crew members are advised to familiarize themselves with this Code. (Annex I - IV).

## Article 14
### Governing Law and Venue

Any disputes relating to or in any way arising out of this Agreement or any crew member's service on board a vessel shall be governed exclusively by the laws specified in the Seaman's Collective Bargaining Agreement or government-mandated scheme. In the absence of any such Agreement, such disputes shall be governed by the Laws of Bermuda. Venue shall be exclusively limited to that specified in any Collective Bargaining Agreement or government-mandated scheme. In the absence of such Agreement, venue shall exclusively be limited to Bermuda, the flag country or the country of the crew member's citizenship.

10

ANNEX 1

THE CODE OF CONDUCT

1    INTRODUCTION

Since seafaring is an occupation which requires seafarers to spend their working and leisure hours in the confined environment of the ship and in company with the same individuals, the need for appropriate discipline and behavior assumes a particular importance. The most effective form of discipline is self-discipline, which in turn springs from a responsible attitude to the job together with a concern for the efficient operation of the ship and for the comfort and convenience of colleagues.

Failures of self-discipline which occur will be dealt with in accordance with the following Code of Conduct containing the basic rules of reasonable behavior expected from all staff. However, disciplinary procedures should not be viewed primarily as a means of imposing sanctions. They are also designed to emphasize and encourage improvements in individual conduct.

In any emergency or other situation in which the safety of the ship or of any person on board is at stake, the Captain, Officers, Petty Officers and Supervisors are entitled to look for immediate unquestioning obedience of orders. There can be no exception to this rule. Failure to comply will be treated as among the most serious breaches of this Code and will be liable to lead to the offenders immediate dismissal from the ship. It may also warrant prosecution.

Emergencies are fortunately rare and this document is primarily concerned with the day to day situation on board. It should be borne in mind, however, that certain acts of misconduct (e.g. absence from place of duty or heavy drinking) could have the effect of causing a state of emergency.

2    PROCEDURES FOR DEALING WITH BREACHES OF THE CODE

   a)    An employee who is alleged to have breached the Code of Conduct will be seen in the first instance by his or her Supervisor or by an Officer designated by the Captain. If the Supervisor or Officer is satisfied that no further action is called for or that the breach, although proven, calls for no more than an informal verbal warning, he will proceed accordingly and the matter will thereafter be regarded as closed.

   b)    If the offense is such that a formal written warning may result, the case will be heard by the Head of Department or an Officer designated by the Captain. In cases where dismissal may result (either from a repeated minor

11

breach of the Code or as a result of an offense of a more serious nature), the case will be heard by the Captain. The Captain will himself deal with any serious case impacting on the safe operation of the ship or on the safety of anyone on board.

c) Those hearing cases will deal with them with the minimum of delay. They will inform the crew member of the alleged breach giving an opportunity to say whether the breach is admitted or otherwise, to call any witnesses and to question them on their evidence and to make any statement in answer to the alleged breach including any comments on the evidence produced.

d) An employee shall have the right to be accompanied by an individual of his/her choosing, who may advise him/her and speak on his/her behalf, whenever an alleged breach of this Code is being considered.

e) After a careful and thorough investigation and having considered all the evidence, those hearing cases will inform the employee whether or not they are reasonably satisfied that the employee committed the alleged breach. If it is found that the employee committed the alleged breach, the person dealing with the matter will impose a penalty which is considered to be reasonable in all the circumstances, taking into account the employee's record on the ship and any other relevant factors, and may announce:-

  i) that he/she is giving an informal verbal warning or a formal written warning or

  ii) in cases heard by the Captain, that the employee will be dismissed from the ship. If the Captain decides that the continued presence of the offender on board would be detrimental to the efficient and safe running of the ship or to the maintenance of harmonious personal relations on board, he may arrange for dismissal and repatriation from the next port of call. In all cases of dismissal, details will be entered in the Official Log Book and copies of the log entries given to the individual concerned.

f) As well as any formal written warnings, the employee shall be given a copy of all entries made in the Logbook relating to his/her breach of this Code and shall acknowledge receipt. Employees being dismissed from the ship should be given copies of the relevant Logbook entries and Record of Dismissal before they disembark from the ship.

12

g)    No crew member may be warned or dismissed for any reason other than for a specified breach of the Code of Conduct. Thus, for example, in the case of a crew member who has committed a minor breach of the Captain's Standing Orders, the formal offense to be recorded in the documentation is a breach of Section 15 of the Code of Conduct in that the individual committed an act of disobedience by failing to comply with a specified section of the Captain's Standing Orders. The same principle applies to crew members being dismissed; they may only be dismissed for specific breaches of the Code. The documentation may cross refer to Captains' Standing Orders etc. but, as in the case of the above example, the formal offense to be recorded must be a specific offense under the Code.

h)    The Formal Warning/Notice of Dismissal Form is to be used in all cases. The form gives a choice of two formal warnings; the first of these is to be used in cases where a Supervisor gives a warning, the second is to be used in the case of warnings given by Heads of Departments or Captain's. Similarly, provision has been made in the form for dismissal arising from a) repeated breaches of the Code and b) breaches of a specific dismissible offense.

i)    The Captain will hear all cases likely to result in dismissal; this reflects his authority as Master of the ship under international law and his relationship with the crew and also the fact that he is the ultimate authority on board.

In cases where crew members are dismissed, the facts are to be recorded in the Official Log Book as per the following example:

Saturday 27 March, 2000. Article No 123, John Doe, Stateroom Steward, was this day found to be in breach of the Code of Conduct sections 25 and 32 in that on 24 March 2000 while under the influence of alcohol Mr. Doe assaulted Article No 100, Ann Other, Stateroom Steward. Mr. Doe was dismissed and will be disembarked from the ship today and repatriated to UK from Fort Lauderdale tomorrow.

The usual practice is to have log entries typed on plain paper and these are then pasted into the log itself. If log entries are not typed, they should be written in legible script and in English. Any witness statements and any other documentary evidence should be attached to the log entry.

Copies of the Record of Warning/Dismissal, any entry in the Log Book and any attachments to the log entry, must be given to the crew member

concerned before they leave the ship; there are to be no exceptions to this requirement which ensures that anyone being dismissed is in full possession of all the relevant papers before they disembark.

j)    All personnel are subject to the civil and criminal laws both of the country of ship registry and of those of the countries visited. For criminal offenses or certain offenses prejudicial to the safety of the ship or affecting the environment, there may be a liability to prosecution in the courts. All instances of criminal acts will be referred immediately to the relevant shore authorities by the Captain. The Company will also offer every assistance to anyone who wishes to commence either a civil or criminal prosecution resulting from unlawful acts against individuals.

3    THE CODE OF CONDUCT

The following Code of Conduct sets out both the Company's requirements and the sanctions for breaches of them.

Breaches which, depending upon the circumstances of the case, may result in an informal verbal warning or formal written warning are marked (Warning) in the following Code. Breaches for which dismissal from the ship, either immediately or at the end of the cruise, according to the circumstances of the case, may be considered appropriate (apart from any legal action which may be called for) are marked (Dismissal) in the following Code.

It should be noted that the person dealing with a breach under this Code of Conduct may give an informal verbal warning or formal written warning in cases which are not considered to justify dismissal in the particular circumstances of the case. Similarly, the Captain may dismiss an individual for repeated commissions of minor breaches.

a)    Health & Safety

The safety of the ship and those on board are of paramount importance and all staff are expected to comply fully with all requirements, procedures or rules concerning safety matters and to attend safety training and/or drill sessions as and when required. Similarly, all staff are expected to conform to all laid down guidelines and procedures concerning health and hygiene both personal and professionally.

14

Ref. No

1    Combination with others at sea to impede the progress of the voyage
     or navigation of the ship.   (Dismissal)

2    Conduct endangering the ship or persons on board and/or
     disobedience of orders relating to safety or security of the ship or any
     person on board.   (Dismissal)

3    To be asleep on duty or fail to remain on duty if such conduct would
     prejudice the safety of the ship or any other person on board.
     (Dismissal)

4    Persistent and/or willful failure or refusal to wear and/or use safety
     equipment and/or clothing and/or observe proper safety procedures
     when and/or where required to do so, including the contravention of
     Watertight Door procedures.   (Dismissal)

5    Persistent and/or willful refusal or failure to attend safety training
     and/or drill sessions when so required or to fail to obtain any safety-
     related certificates which the Company may require.   (Dismissal)

6    Causing or permitting unauthorized persons to be on board the ship.
     (Dismissal)

7    Misuse of a crew Identity Card whether belonging to the individual or
     to another.   (Dismissal)

8    Behavior which seriously detracts from the safe and/or efficient
     working of the ship.   (Dismissal)

9    To smoke, use a naked light or an unapproved electric torch in any
     place where smoking or the use of naked lights or unapproved torches
     is prohibited or in other than designated smoking areas.   (Warning or
     Dismissal as appropriate)

10   Failure to report to the Medical Department onboard any personal
     infectious or contagious illness which may be contracted.   (Warning
     or Dismissal as appropriate)

11   Failure to conform to laid down Company rules or guidelines and/or
     violate the rules and requirements of USPH or of any other Health
     Authority concerning hygienic practices whether in the course of duty
     or otherwise.   (Warning or Dismissal as appropriate)

15

12    Unauthorized cooking in any place on board.(Warning or Dismissal as appropriate)

**b)    Care of the Environment**

The Company takes its environmental responsibilities very seriously as the sea is our home and our business requires our operating strict and efficient environmental policies and routines. It is important that all staff be environmentally aware and play their part in ensuring that the ship's operation be conducted in accordance with Company and statutory requirements.

13    Unauthorized dumping of garbage and/or the disposal of any material whatsoever over the side of the ship.   (Dismissal)

14    Contravention of procedures designed to avoid polluting the environment.   (Dismissal)

**c)    Performance in the Job**

All employees are required to perform their jobs to the best of their ability. They should conduct themselves in a polite, cheerful and helpful manner and their behavior must be such that it does not invite justifiable adverse criticism from passengers. Employees are entitled to be informed clearly what their duties are and to whom they are responsible for carrying them out. If in doubt, they should ask. Within the scope of their duties, reasonable commands and instructions must be obeyed.

15    Minor acts of disobedience, negligence or neglect of duty.   (Warning)

16    Poor time-keeping and/or beginning or stopping work before the authorized time and/or returning on board after the pre-sailing time designated by the Captain.   (Warning)

17    Failure to report to work without satisfactory reason and/or absence from place of duty or from the ship without leave.   (Warning)

18    Unsatisfactory or discourteous work performance and/or service to passengers.   (Warning)

19    Failure to maintain the required standards of uniform, appearance, personal cleanliness, or hygiene (See Annex III).   (Warning)

20    Persistent or willful failure to perform duty and/or meet the required work standards and/or gross acts of negligence in the performance of duty.   (Dismissal)

16

21    Soliciting gratuities or requesting passengers to write to the Company in praise of the individual's performance.   (Dismissal)

**d)    Drug and Alcohol Abuse**

The unlawful possession or distribution of drugs by any person on board ship renders him/her subject to dismissal as well as possible legal proceedings and to exclusion from further employment. There are ship's rules about bringing intoxicating liquor on board and they should be understood and strictly observed. Facilities for drinking on board are there to be used but the ability of a crew member to perform his normal or emergency duties must never be impaired.

22    Failure to conform to ship's rules concerning the bringing of alcohol on board.   (Warning)

23    Incapacity through the influence of drink or drugs and/or inability to carry out duty to the prejudice of the safety of the ship or of any other person on board.   (Dismissal)

24    Unlawful possession, use, dealing in or distribution of, or otherwise involvement with, drugs. (Dismissal) Failure to comply with a request for a drug test.   (Dismissal)

25    Taking of alcohol to the extent that this causes inconvenience or distress to passengers or others on board or impairs the ability of an employee to perform his normal duties. (Dismissal) Failure to comply with a request for an alcohol test.   (Dismissal)

**e)    Treatment of the Ship and any Property on Board**

For the duration of their tour of duty, the ship is not only the staff member's place of work but also their home. Accommodation and other facilities, whether provided for personal use or to be shared with others, should therefore be treated with respect.

26    Failure to keep cabin and/or living accommodation to an acceptable standard.   (Warning)

27    Willful damage to the ship or any property on board.   (Dismissal)

28    Theft or possession of stolen property.   (Dismissal)

17

**f)    Behavior Towards Others**

Anti-social behavior can cause the employee to become a nuisance to others on board and in extreme circumstances can be hazardous to the ship and the crew. Examples can include not only excessive drinking but also such behavior as causing excessive noise, abusive language, aggressive attitudes, sexual harassment, and offensive personal habits.

29    Offensive or disorderly behavior and/or minor acts of assault. (Warning or dismissal as appropriate)

30    Discrimination against and/or offensive behavior towards any person on board on grounds of gender, race, color, national origin, sexual orientation, and religion or any other reason.   (Warning or Dismissal as appropriate)

31    Possession of weapons.   (Dismissal)

32    Assault.   (Dismissal)

33    Sexual harassment of any person on board and/or indecent conduct. (Warning or Dismissal as appropriate)

34    Intimidation, coercion, and/or interference with the work of other employees.   (Dismissal)

35    Behavior which seriously detracts from the social well being of any other person on board.   (Dismissal)

36    Unauthorized presence in passenger public areas and/or accommodation or causing passengers to enter Officer or Crew accommodation and/or areas without proper authorization.   (Dismissal)

**g)    Other Breaches**

No Code can completely cover every act of unacceptable behavior and each case will be considered on its merits.

37    Minor breaches of Captain's Standing Orders.   (Warning)

38    The taking of food from galleys etc. to be consumed in cabins. (Warning)

39    Unauthorized trading for private gain, including the misappropriation of Company property.   (Dismissal)

40    Bringing or having on board any birds, pets or livestock of any kind. (Dismissal)

41    Making or distributing false or malicious statements, or disclosing confidential information about the Company, its employees, or passengers and/or giving interviews/comments to the press/media without the Captain's permission.   (Dismissal)

42    Supplying false or misleading information when applying for employment and/or at any time during employment.   (Dismissal)

43    Altering or falsifying and/or causing any other person to alter or falsify employment time records.   (Dismissal)

44    Gambling or participating in any wagering game(s) or activity (excluding those authorized in the Wardroom or Crew Club). (Warning or Dismissal, as appropriate)

45    Contravention of Customs and/or Immigration regulations.   (Warning or Dismissal, as appropriate)

## ANNEX II

### COMPLAINTS PROCEDURE

To avoid persons taking matters into their own hands, it is essential to have a procedure for dealing with complaints which enables the complainant with a genuine grievance to bring it, simply and quickly, to the notice of a person in authority.

The following is the procedure, which is designed to help everyone on board, to apply:

1       A complaint will normally be made individually by the person who feels he/she has a genuine grievance, to their immediate Supervisor. The complaint should be made verbally in an orderly way and at a time when a proper hearing can be given.

2       If the complainant considers that his/her complaint has not been satisfactorily disposed of by the Supervisor, he/she will have the right to request to see the Head of Department and, if it is so desired, to put the complaint in writing.

3       It will then be the duty of the Head of Department to interview the complainant with the Supervisor. If the complainant is still not satisfied, he/she will have the right to request to see the Staff Captain and the Head of Department will arrange for this. In appropriate circumstances, the Staff Captain may refer a complainant to the Captain.

4       The complainant may be accompanied, if he/she so wishes, by an individual of his/her choosing when discussing a complaint.

5       This procedure does not preclude a member of the crew from making a request to see the Supervisor, Head of Department, Staff Captain or the Captain on any private matter, but it must be understood that if it is considered that the matter is one which should have been dealt with under the Complaints Procedure, instructions will be given that this course must be followed.

6       No one making a complaint in good faith and in accordance with the foregoing procedure, will be penalized in any way for making the complaint.

20

ANNEX III

DRESS CODE : APPEARANCE, PERSONAL CLEANLINESS AND HYGIENE

The following are the Company's requirements :

1       UNIFORM – Your uniform helps to create a good impression.

      A.       Uniform, together with the appropriate shoes, as per the Uniform Policy and Procedures Manual are to be worn at all times when on duty.  Uniform is to be spotlessly clean and neatly fitting.  It must also be properly pressed at all times and maintained in good condition.  No objects are to be carried in pockets where they are visible.

      B.       Your name badge and your C.R.U.I.S.E. pin are a very important part of your uniform and you must wear them at all times while on duty. Decorations on your name badge are not permitted.

      C.       Shoes must always be clean, polished and in good repair.  Conservative styles only are to be worn.

          For women, conservative style shoes are to be worn generally with rounded toes and low heels. For safety reasons shoes with open toes, open heels, or sandals are not permitted.

          With uniform consisting of skirts or dresses, panty-hose/stockings/tights in beige or neutral shades only, are to be worn when on duty. Seams and other decorative features are not permitted. Skirts are not to be altered to the extent they change the original design of the company style. Skirts must be worn on or just below the knee.

      D.       Although dirty jobs are performed, every effort is to be made to remain clean and smart at all times.

      E.       Where required, safety shoes and clothing must be worn at all times and appropriate safety equipment used.

2.      PERSONAL HYGIENE

      A.       Regular attention is to be paid to hygiene by showering regularly at least once a day and by use of suitable deodorants including underarm

21

deodorants, however these are not to be strongly scented (to prevent body odor, bathing may be necessary more than once a day).

B.   Strongly scented perfumes or colognes are to be avoided.

C.   Particular attention is to be paid to finger nails which are always to be kept clean, well trimmed, and of moderate length (refer also to point 3C).

D.   Strict attention is to be paid to the ship's and USPH rules on hygienic working practices.

E.   Staff feeling unwell and/or having open cuts and sores, are to immediately seek medical attention. Disciplinary action will be taken against staff who infect passengers and other staff by failing to seek medical attention under such circumstances.

3.   HAIR/MAKE-UP

A.   Eccentric styles are not acceptable, nor hair which is dyed to an unnatural color.

B.   Hair must be dried after washing and before coming to work.

### WOMEN

C.   Hair must be worn in a neat, attractive and conservative style. Female staff working in the Dining Room or food service outlets are to ensure hair is worn up and off of the shoulders and away from your face. Female Galley staff are to wear their hair, if long, tied back and covered with a hair net.

Make-up is to be tastefully applied and never excessive. Only neutral shades of nail polish are to be worn.

For USPH reasons nail polish is not permitted to be worn by Female staff working in the Galley.

### MEN

Hair and sideburns must be kept neatly trimmed and is to be worn in a style which is neither excessively long or short. Hair on men is to be no longer than the top of the collar.

22

A clean-shaven appearance is required. Moustaches, beards and long sideburns are not permitted. It may be necessary for some men to shave more than once per day.

4.   JEWELRY

    A.   Jewelry is not a part of your uniform.  The following only is permitted:

        1.   1 watch
        2.   1 ring (signet or wedding rings)
        3.   1 necklace/chain (worn beneath blouse/shirt)
        4.   Earrings (One pair.  No hanging types.  Women only, one earring to be worn in each ear).  Earrings/studs may not be worn by male staff on duty.
        5.   No other broaches or pins to be worn with the exception of your name badge or C.R.U.I.S.E. pin (worn on the left-side)

5.   TATTOOS

    A.   The wearing of tattoos which are visible (eg. arms, legs, ankles) when uniform is worn is unacceptable in passenger service areas.

It is the responsibility of each individual crew member to adhere to the above Company guidelines.

Should a crew member show up for duty not having adhered to any of the above guidelines, their Supervisor has the authority to request the crew member to return to his/her cabin.

Consistent violations regarding any of the above guidelines will lead to disciplinary measures being taken.

*Notes*:  Officers, deck and technical ratings and hotel staff in non-passenger areas may wear a neatly trimmed beard, long side-burns and/or a moustache, but only with the permission of the Head of Department. Beards and/or moustaches traditionally worn in the past by Muslim members of the deck and engine crew continue to be acceptable as does hennaed hair/beards. The Company will consider departures from the provisions of this policy based upon sincerely held religious beliefs.

**ANNEX IV**

**SEXUAL ASSAULT / HARASSMENT FREE WORKPLACE**

1. Complaints are received from time to time from passengers and others about forms of harassment on board. In most cases, particularly those involving sexual harassment, there is no actual intent to harass and the complaints arise from misunderstandings caused by different cultural practices and standards. A kiss on the cheek, for example, may be perfectly acceptable in one culture but completely unacceptable in another.

2. Ship's Company are reminded that harassment on the basis of gender, race, color, national origin, sexual orientation and religion are dismissible offenses and will not be tolerated at any time. (Sections 30 and 33 of the Princess Cruises Code of Conduct, M.N. Code of Conduct 9(XV).

3. Ship's Company are advised that any unwelcome physical contact, sexual advances or similar objectionable actions with a person, whether passenger or crew, will be considered a violation of this policy and possible grounds for dismissal.

4. For the purposes of defining sexual harassment, staff are advised that sexual harassment does not only have to take the form of physical contact but can include for example (1) visual conduct, including leering, making sexual gestures, displaying of sexually suggestive objects or pictures, cartoons or posters; (2) verbal conduct, such as sexually-oriented verbal kidding, teasing or jokes, repeated offensive sexual flirtations, advances or propositions, derogatory comments, epithets, slurs and jokes, verbal abuse of a sexual nature, verbal comments about an individual's body or sexual activity, suggestive or obscene letters, notes or invitations; or (3) physical conduct, such as touching, hugging, pinching, brushing up against another's body, or impeding or blocking movements.

5. Any crew member who experiences any unwanted sexual advance made by a passenger or crewmember or other conduct prohibited by this policy, should not hesitate in informing their Head of Department, who will report directly to the Captain. If the person being complained against is the Head of Department, the crewmember should request an interview with the Captain. A suitable and discreet investigation will then be undertaken.

6. No crew member should be subjected to retaliation for reporting or expressing opposition to, any incident of harassment. Any such retaliation is a dismissible offense.

24

**◣JS 44**   (Rev. 11/04)

# CIVIL COVER SHEET

# 05-23087

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Jack Cooper Pinto, Nicola Prazeres, Octavio Reveles, individually, and on behalf of all others similarly situated,

**DEFENDANTS**

MAGISTRATE JUDGE
Princess Cruise Lines, Ltd d/b/a Princes Cruises
TURNOFF

CIV-ALTONAGA

**(b)** County of Residence of First Listed Plaintiff   *N/A*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   *Miami-Dade*
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
T. Renzetti
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
(305) 372-1800

Attorneys (If Known)

Marty Steinberg, Esq.

**(d)** Check County Where Action Arose: ☑DADE  ☐MONROE  ☐BROWARD  ☐PALM BEACH  ☐MARTIN  ☐ST. LUCIE  ☐INDIAN RIVER  ☐OKEECHOBEE ☐HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

Dade 1:05CV23087 Altonaga/WCT

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☑ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
46 U.S.C. § 10313   Seaman's Wage Act

LENGTH OF TRIAL via *10* days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   *11/18/05*

SIGNATURE OF ATTORNEY OF RECORD   Thomas A. Tucker Ronzetti

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____

$250.00   931134
11/28/05